

Kenneth W. Kable, Saginaw, Mich., for debtor.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for Internal Revenue Service.

ARTHUR J. SPECTOR, Bankruptcy Judge.

At the time the debtor's Chapter 11 Plan of Reorganization came on for confirmation, the debtor's counsel volunteered that there was an ongoing dispute with the Internal Revenue Service which, unless settled or resolved, could doom the plan. Although the IRS did not file an objection to confirmation of the proposed plan, the debtor chose not to proceed. Instead, he filed this motion under 11 U.S.C. § 505 for a determination of the extent of his liability to the IRS. At the hearing held on April 17, 1986, the parties stipulated to the material facts and argued the law. Although invited to, the parties have evidently cho-

**In re Robert D. CHURCHFIELD d/b/a Currently Wiring, Debtor.**

**Bankruptcy No. 82–00755.**

United States Bankruptcy Court, E.D. Michigan, N.D.

June 16, 1986.

---

sen not to supplement their oral presentations with written briefs.

The IRS has a secured claim of $20,-220.83 based on a tax lien recorded on April 1, 1982, on all property of the debtor in existence at the time the bankruptcy was filed on November 8, 1982. The IRS argues that it is entitled to interest on its secured claim during the pendency of this bankruptcy case at the IRS' statutory rate because its claim is over-secured. The debtor says that the IRS should be entitled to no more than the "passbook rate" of interest from the inception of the case or its statutory rate of interest from the date that sufficient assets came into the estate to make the IRS fully secured. The debtor points out that at the time the case was filed, he had only one potentially valuable asset, and an entirely contingent one at that: a lawsuit for personal injuries sustained in an airplane crash allegedly caused by a design defect in the airplane he was flying. Since then, however, that case was settled for $100,000, netting the estate approximately $67,000. This amount concededly is far more than the IRS' secured claim. If the assets in the estate had been evaluated when the case was filed, the debtor maintains, the IRS would have been woefully undersecured, since the then present value of such a contingent asset would have been minimal. The debtor, therefore, concluded that "it is inequitable to the Debtor and creditors of the estate to permit IRS to charge interest on the value of an unknown, speculative, and unliquidated claim from the date of the petition in Chapter 11."

Section 505(a)(1) allows the bankruptcy court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." The question is decided, however, by reference to § 506(b), which states:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The threshold issue, which the Court addressed to both parties and for which briefs were solicited, is whether the IRS is entitled to interest on its over-secured tax lien at all. As is too frequently the case,[1] a substantial question of law turns on the presence or absence of punctuation in a statute. If one reads § 506(b) to say that an over-secured creditor is entitled to interest—and also, if the agreement of the parties provides it, reasonable fees, costs or charges—then the IRS is entitled to interest computed at some rate. On the other hand, if one reads the section to state that an over-secured creditor is entitled to interest, fees, costs, and charges, but only if the agreement with the debtor so provides, then the IRS may not be entitled to interest. This peculiar punctuational/grammatical issue has previously been noted and discussed. *Compare Best Repair Co. v. United States,* 789 F.2d 1081 (4th Cir.1986) and *In re Loveridge Machine & Tool Co.,* 9 C.B.C. 2d 1329, 1331, 36 B.R. 159 (Bankr.D.Utah 1983) *with In re Trent,* 11 C.B.C.2d 453, 454–455, 42 B.R. 279 (Bankr.W.D.Va.1984); *see 3 Collier on Bankruptcy,* § 506.05 at 506–41–42 (15th ed. 1979). We have found ten published opinions, eight of them from bankruptcy courts, and one each from a district court and a court of appeals, which have construed § 506(b) with reference to this issue. Seven, including the only Court of Appeals decision so far, held that non-consensual lien claimants were entitled to post-petition interest. *See Best Repair Co. v. United States, supra; In re Best Repair Co.,* 51 B.R. 33 (Bankr.W.D.Va.1985); *In re Mor-*

**1.** *See e.g. In re Hugo,* 58 B.R. 903, 42 U.C.C. Rep. 1811 (Bankr. E.D.Mich.1986) and *In re Labine,* 42 B.R. 883, 12 B.C.D. 186 (Bankr. E.D.Mich. 1984).

*rissey,* 10 C.B.C.2d 677, 37 B.R. 571 (Bankr. E.D.Va.1984); *In re Hoffman,* 28 B.R. 503 (Bankr.D.Md.1983); *In re Loveridge Machine & Tool Co., supra; In re Bormes,* 14 B.R. 895 (Bankr.D.S.D.1981); *In re Busman,* 5 B.R. 332, 6 B.C.D. 683 (Bankr.E.D. N.Y.1980). Three opinions, including the district court opinion which reversed a published bankruptcy court opinion and which was itself reversed, held to the contrary. *See Best Repair Co. v. United States,* 50 B.R. 386 (W.D.Va.1983); *In re Trent, supra; In re Stack Steel & Supply Co.,* 28 B.R. 151, 10 B.C.D. 232 (Bankr.W.D.Wash. 1983). We respectfully disagree with the Fourth Circuit Court of Appeals' decision that § 506(b) contains "plain terms" which compel the result it reached. *Best Repair Co. v. United States,* 789 F.2d 1081 CCH Bankr.L.Rep. at p. 89,011. Not being an authority on English grammar and punctuation, we find that the words and punctuation of the statute are hopelessly ambiguous, and so move on to analyze their meaning through examination of legislative intent, which even the Fourth Circuit believed was necessary and appropriate. *Id.* at p. 89,012, 789 F.2d 1081.

■ Before there was a Bankruptcy Code there was a Bankruptcy Act. Many of the issues courts now struggle over were fought and resolved decades ago. If Congress disapproved of those decisions, it had the opportunity in 1978 to undo them in the Bankruptcy Code. For example, Congress enacted § 523(a)(6), which provides that debts arising from willful and malicious conduct by the debtor may be excepted from discharge. The House Committee on the Judiciary stated that " 'willful' means deliberate or intentional. To the extent *Tinker v. Colwell,* 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.". H.R.Rep. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. 989, 95th Cong., 1st Sess. 77–79 (1978), U.S.

Code Cong. & Admin.News 1978, pp. 5787, 5865, 6320. Or, if Congress particularly approved of a judicial result, it codified it. For instance, § 510(c), which authorizes bankruptcy courts to equitably subordinate certain claims, is "intended to codify case law, such as *Pepper v. Litton,* 308 U.S. 295 [60 S.Ct. 238, 84 L.Ed. 281] (1930), and *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307 [59 S.Ct. 543, 83 L.Ed. 669] (1938)." H.R.Rep. 595, *supra* at 359, U.S. Code Cong. & Admin.News 1978, p. 6315. Where no change was effected, it is presumed that the then current state of the law was intended to be retained. *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869, 55 L.Ed.2d 40, 46 (1977); *In re Stratton Group, Ltd.,* 12 B.R. 471, 479 (Bankr.S.D.N.Y.1981).

■ All five circuits of the Court of Appeals which were called upon to decide whether the Bankruptcy Act provided for post-petition interest to be paid to fully secured tax lien claimants held that it did not. *In re Boston & Maine Corp.,* 719 F.2d 493 (1st Cir.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984); *In re Kerber Packing Co.,* 276 F.2d 245 (7th Cir.1960); *United States v. Mighell,* 273 F.2d 682–684 (10th Cir.1959); *United States v. Bass,* 271 F.2d 129 (9th Cir.1959); *United States v. Harrington,* 269 F.2d 719 (4th Cir.1959).[2] Lower court opinions holding this view include *In re Lykens Hosiery Mills,* 141 F.Supp. 895 (S.D.N.Y.1956); *In re Industrial Machine & Supply Co.,* 112 F.Supp. 261 (W.D.Pa. 1953); *In re Flying W Airways, Inc.,* 2 B.C.D. 244, 8 C.B.C. 117 (Bankr.E.D.Pa. 1976); *contra, In re Parchem,* 166 F.Supp. 724 (D.Minn.1958); *In re Ross Nursing Home,* 2 B.R. 496, 12 B.C.D. 1252 (Bankr.E. D.N.Y.1980). These Court of Appeals decisions noted:

Despite the general prohibition on the payment of post-petition interest, three exceptions have been developed by the federal courts. Interest may accrue: (1)

---

**2.** We find it surprising that the Fourth Circuit Court of Appeals in *Best Repair Co. v. United States,* CCH Bankr.L.Rep. ¶ 71,139 (4th Cir.

1986), cited but did not discuss its prior contrary holding.

where the bankrupt ultimately proves to be solvent; (2) where securities, held by the creditor produced income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim.

*In re Boston & Maine Corp., supra,* 719 F.2d at 496 (citations omitted). Only the third exception is at issue here.[3] These opinions all carved out an exception to the third exception, by holding that only creditors with consensual liens are entitled to post-petition interest. The rationale is best stated in the *Boston & Maine* case:

> Those cases in which courts have applied the third exception, permitting postpetition interest to accrue, have generally involved mortgages, trust deeds, pledges or conditional sales contracts. In all of these circumstances, the creditor's security interest arises from a voluntarily executed agreement between the debtor and the creditor. The two parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. *In re Kerber Packing Co.,* 276 F.2d [245] at 247; *United States v. Harrington,* 269 F.2d [719] at 723–724. To deny such a creditor postpetition interest, when the amount of the security is sufficient to cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy. *Note, The Federal Tax Lien in Bankruptcy: Enforceability of Liened Claims for Penalties and Post-Petition Interest,* 44 Minn.L.Rev. 1149, 1156 (1960). Thus, granting postpetition interest to mortgages and other holders of contractual liens satisfies the expectations of the parties and strikes an eq-

uitable balance between the creditors and the debtors.

The Supreme Court has never ruled on the applicability of the third exception, granting postpetition interest when there is sufficient secured collateral, to tax liens. We agree with those federal courts of appeals which have held that the third exception does not embrace tax liens. *In re Kerber Packing Co.,* 276 F.2d at 247–248; *United States v. Mighell,* 273 F.2d 682, 684 (10th Cir.1959); *United States v. Bass,* 271 F.2d [129] at 131; *United States v. Harrington,* 269 F.2d at 723–24. A meaningful distinction can be drawn between contractual liens, such as a mortgage or deed of trust, and statutory liens, such as Cambridge's perfected tax lien. A statutory lien depends for its existence solely on a legislative act creating the lien in specified circumstances. No bargaining takes place between the debtor-taxpayer and the taxing entity which is granted a lien; the lien cannot be classified as voluntary.

Further, the payment of the interest, which is secured by the lien, is not contemplated by the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device assuring the collection of delinquent taxes. In the context of an insolvency proceeding, to grant the taxing entity postpetition interest on its tax lien would impose the "enforcement device" not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid. Such creditors are but innocent bystanders; they could have done nothing to effect the prompt payment of taxes and avoid the imposition of postpetition interest. To penalize these creditors for the bankrupt's inability to pay its taxes on time violates all notions of equity.

*Id.,* 719 F.2d at 497 (footnote omitted). All but the *Boston & Maine* case were decided

---

3. The Sixth Circuit applies this third exception, at least with respect to consensual liens. *Weeks v. McInnis (In re Macomb Trailer Coach),* 200

F.2d 611 (1952), *cert. denied,* 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378 (1953).

prior to 1978, when the Bankruptcy Code was adopted, and even that one was decided before the substantial amendments to the Code were made in 1984. Yet this concept was never changed by Congress. "Thus, 11 U.S.C. § 506(b) can be said to codify pre-Code case law." *Collier, supra,* 506–37 n. 1; *contra, In re Loveridge Machine & Tool Co., supra,* 9 C.B.C.2d at 1332, n. 4, 36 B.R. 159.

We cannot believe that Congress would overrule an unbroken line of five court of appeals decisions on an issue involving the federal fisc without even one word of explanation of its intention. Likewise, we cannot find that the mere placement of a comma under the circumstances evidences such an intention. Therefore, we agree with those courts which found that § 506(b) creates no material change from prior practice, and are persuaded to follow the nearly unbroken line of cases which hold that creditors holding nonconsensual liens are not entitled to post-petition interest thereon in bankruptcy cases. For these reasons the third exception to the rule barring interest in bankruptcy cases is inapplicable. Since it is not contended that the estate is solvent or that the IRS possesses collateral of the debtor that has produced income after the filing of the petition, neither of the first two exceptions apply. Accordingly, the general rule barring interest in bankruptcy cases controls. The motion of the debtor is granted. The Court fixes the IRS' claim as the amount of the pre-petition tax and pre-petition penalty[4] less whatever was paid post-petition[5] and without inclusion of interest for any period after November 8, 1982, the date this case was filed.

Upon submission, an order consistent with this opinion will be entered.

---

**4.** *Commonwealth of Kentucky v. Farmers Bank & Trust Co.,* 139 F.2d 266 (6th Cir.1943) and *In re Urmos,* 129 F.Supp. 298 (E.D.Mich.1955) permit the IRS' pre-petition tax lien to continue as to penalties included therein. *Also see In re Stack Steel & Supply Co.,* 28 B.R. 151, 10 B.C.D. 232 (Bankr.W.D.Wash.1983).

**5.** According to the debtor, and not disputed by the IRS, the debtor paid $12,000 to the IRS, with Court authorization, on November 21, 1985 as a down-payment on the plan distribution, to be applied on the tax portion of the claim only, in order to stop the running of alleged further interest.