**In re DAN–VER ENTERPRISES, INC., Debtor.**

Bankruptcy No. 79–0887.
Civ. A. No. 86–1038.

United States District Court,
W.D. Pennsylvania.

Dec. 17, 1986.

**952**

Edward Olds, Pittsburgh, Pa., for Louis and Evelyn Sapp.

Michael Henry, McCrady, Kreimer, Ravick & Bonistalli, P.C., Pittsburgh, Pa., for Dan-Ver Enterprises, Inc.

## OPINION

COHILL, Chief Judge.

We have before us the appeal of judgment lien creditors, Louis and Evelyn Sapp (hereinafter the "Sapps"), from a judgment and order entered by the United States Bankruptcy Court for the Western District of Pennsylvania, 60 B.R. 568, denying the Sapps' claim for postpetition interest on an oversecured judgment lien against debtor, Dan-Ver Enterprises, Inc. ("Dan-Ver"). We will affirm the decision of the bankruptcy court.

### I. *Facts*

The Sapps obtained a judgment against Dan-Ver for $41,010.64 on September 13, 1978; this created a lien on Dan-Ver's only asset, a multi-unit apartment building. 42 PA. CONST.STAT. § 4303(a).

On November 2, 1979, Dan-Ver filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 301. As part of the bankruptcy proceeding the apartment building was sold for $344,000.00. From the proceeds of sale, and pursuant to the bankruptcy court's Order for Distribution under the Chapter 11 reorganization, the Sapps received $40,-460.00 of their claim against Dan-Ver. Following this payment and others to satisfy senior claims, $31,138.55 remains in Dan-Ver's estate. Dan-Ver still owes $129,-989.50 to junior lien creditors.

The Sapps argued before the bankruptcy court that they are entitled to interest on their judgment from the time it was entered against Dan-Ver until Dan-Ver petitioned for bankruptcy—what is known as "prepetition interest." The Sapps contended that they are also entitled to interest on their judgment against Dan-Ver for the period following Dan-Ver's bankruptcy petition—"postpetition interest." The bankruptcy court ruled that the Sapps are entitled to prepetition interest in the amount of $5,369.74, but not to postpetition interest. This appeal followed.

### II. *The Case of the Capricious Comma*

The parties to this action agree that § 506(b) of the Bankruptcy Code controls the issue of whether the Sapps are entitled to postpetition interest. Section 506(b) states:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. (Line under the capricious comma supplied.)

11 U.S.C. § 506(b). The parties disagree, however, as to the proper construction of the statute; in particular, the effect which Congress intended in placing a comma after the phrase "interest on such claim."

The Sapps assert that § 506(b) supports their entitlement to postpetition interest because the value of the real estate securing their claim against Dan-Ver exceeds the amount of that claim, as required by § 506(b). Thus, the Sapps contend, they should be allowed interest on such claim, as provided by the statute. As for § 506(b)'s qualifying language, "provided for under the agreement under which such claim arose," the Sapps argue that this phrase, by reason of the comma following "the amount of such claim" and applicable rules of statutory construction, applies only to "any reasonable fees, costs, or charges." Accordingly, the Sapps conclude that they are entitled to "interest on such claim" regardless of whether it is provided for by contract; therefore, they draw no distinction, with respect to postpetition interest, between secured creditors whose claims are consensual and those whose claims are nonconsensual.

A consensual secured claim arises from a voluntarily executed agreement between debtor and creditor, wherein the two parties bargain with respect to a specific security, knowing the creditor may sell this security in satisfaction of an overdue claim. A nonconsensual secured claim, on the other hand, arises from a judicial or statutory lien; no bargaining takes place with respect to the security upon which the lien is imposed. *See In re Boston and Maine Corp.*, 719 F.2d 493 (1st Cir.1983). The

Sapps' secured claim, although arising from a voluntary agreement of guaranty and suretyship, qualifies as nonconsensual because the real estate and its proceeds, upon which the Sapps' lien attached, was not voluntarily provided as security by Dan-Ver. If, however, Dan-Ver had voluntarily secured its position as guarantor and surety with its real estate, then the Sapps' claim to the real estate would be consensual. Therefore, if § 506(b) does draw a distinction between secured consensual and nonconsensual creditors, with nonconsensual lienholders not being entitled to postpetition interest, the Sapps' argument fails.

It is this distinction which Dan-Ver and subordinate judgment creditors argue exists. They point to the law in effect prior to the enactment of the 1978 Bankruptcy Code. Under pre-Code law, it was well established that in bankruptcy and other insolvency proceedings interest upon claims ceases to accrue at the initiation of the proceedings. *Nicholas v. United States*, 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853, 859 (1966); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 239, 91 L.Ed. 162, 166 (1946); *In re Boston and Main Corp.*, 719 F.2d 493, 495 (1st Cir. 1983); *Debentureholders Protective Committee of Continental Investment Corp. v. Continental Investment Corp.*, 679 F.2d 264, 268–69 (1st Cir.1982), *cert. denied*, *Glen Corporation v. O.C. Associates*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). Two reasons were given for this rule: (1) interest payments are penalties or damages assessed against the debtor for his detention of the creditor's money, and therefore it would be unjust to allow the creditor to recover such penalties or damages from other creditors who were not to blame for the detention; and (2) the bankruptcy court itself, not the debtor, detains the money after a petition is filed. *See Vanston*, 329 U.S. at 163–64, 166; 67 S.Ct. at 240–41; 91 L.Ed. at 166–68; *Debentureholders*, 679 F.2d at 269. Despite this general prohibition on the payment of postpetition interest, three exceptions developed.

Interest could accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where securities held by the creditor produce income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim. *Boston and Maine Corp.*, 719 F.2d at 496.

The third exception, allowing an oversecured creditor to otherwise collect postpetition interest, is applicable to this case. Contrary to the Sapps' construction of present law under § 506(b), cases applying this third exception under pre-Code law did distinguish between consensual and nonconsensual creditors. Oversecured creditors were permitted to collect postpetition interest only where the creditor's claim was consensual. As the Court of Appeals for the First Circuit stated:

> Those cases in which courts have applied the third exception, permitting postpetition interest to accrue, have generally involved mortgages, trust deeds, pledges or conditional sales contracts. In all of these circumstances, the creditor's security interest arises from a voluntarily executed agreement between the debtor and the creditor. The two parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. To deny such a creditor postpetition interest, when the amount of the security is sufficient to cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy. Thus, granting postpetition interest to mortgages and other holders of contractual liens satisfies the expectations of the parties and strikes an equitable balance between the creditors and the debtors.

*Boston and Maine Corp.*, 719 F.2d at 497 (citations omitted). *See also In re Kerber Packing Co.*, 276 F.2d 245, 247 (7th Cir.

1960); *United States v. Harrington*, 269 F.2d 719, 724 (4th Cir.1959) ("The justification for this allowance to mortgagees, etc., would seem to be that when the creditor extends credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy.").

Dan-Ver argues that this pre-Code law compels a conclusion that the Sapps, as nonconsensual oversecured creditors, are not entitled to postpetition interest. Thus, Dan-Ver interprets the requirement of an "agreement under which such claim arose" in § 506(b) to apply equally to "interest on such claim" and "any reasonable fees, costs, or charges," regardless of the comma interposed between these two phrases.

This same dispute concerning the proper construction of § 506(b) has arisen in many cases prior to the present controversy. Unfortunately there is a split among the decisions discussing the construction. Those cases in which this issue has been recognized and which have concluded that postpetition interest is properly payable to nonconsensual secured creditors under § 506(b) include: *Best Repairs Co. v. United States*, 789 F.2d 1080 (4th Cir.1986); *In re Henzler*, 55 B.R. 194 (Bankr.N.D.Ohio 1985); *In re Best Repair Co.*, 51 B.R. 33 (Bankr.E.D.Va.1985); *In re Morrissey*, 37 B.R. 571 (Bankr.E.D.Va.1984); *In re Loveridge Machines & Tool Co., Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983); *In re Hoffman*, 28 B.R. 503 (Bankr.D.Md.1983); *In re Bormes*, 14 B.R. 895 (Bankr.D.S.D.1981); *In re Busman*, 5 B.R. 332 (Bankr.E.D.N.Y. 1980). *Cf. In re Colegrove*, 771 F.2d 119, 122 (6th Cir.1985 (not recognizing any conflict concerning the construction of § 506(b), but otherwise stating that the section "provides for [postpetition] interest on all allowed secured claims where the value of the security is greater than the claim"); *In re Romano*, 51 B.R. 813 (Bankr.M.D. Fla.1985) (not recognizing any conflict concerning the construction of § 506(b), but

otherwise holding that the section provides postpetition interest for judgment lien creditors). Those cases denying postpetition interest to nonconsensual secured creditors under § 506(b) include: *Best Repair Inc.*, 50 B.R. 386 (E.D.Va.1985); *In re Venable*, 48 B.R. 853 (S.D.N.Y.1985) (distinguishing *Busman, supra* ); *In re Churchfield*, 62 B.R. 399 (Bankr.E.D.Mich.1986); *In re Trent*, 42 B.R. 279 (Bankr.W.D.Va.1984). *Cf.* 3 COLLIER ON BANKRUPTCY § 506.05 at 506–41 (15th ed. 1984) ("[The placement of the comma] apparently derived from the need the drafters felt to make clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount).").

### III. Bankruptcy Court Opinion

The bankruptcy court, faced with these conflicting views, held "that the proper reading of the statutory language [of § 506(b)] requires that postpetition interest be allowed only when the parties anticipated such accrual through an initial agreement." *Matter of Dan-Ver Enterprises, Inc.*, 60 B.R. 568, 570 (Bankr.W.D.Pa.1986). The court based this conclusion upon examination of the legislative history of § 506(b) and, in particular, proposed language which was not adopted by Congress. The Bankruptcy Reform Act, as originally drafted by the House of Representatives, contained the following language at § 506(b):

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section is greater than the amount of such claim, there shall be allowed to the holder of such claim, *to the extent collectible under applicable law* interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose. (Emphasis added.)

H.R. 8200, 95th Cong., 1st Sess. (1977). In Congress' final draft, however, the underscored provision was specifically deleted. 124 Cong.Rec. 32, 398, 33, 997 (1978). The bankruptcy court reasoned that the deleted language "would have permitted postpetition interest on non consensual liens." 60 B.R. at 570. The bankruptcy court therefore implies that, by deleting this language, Congress intended that such interest is not permitted on nonconsensual liens.

The bankruptcy court further supported its holding by stating that equitable principles of bankruptcy law require that creditors should be treated fairly and equitably. Allowing a nonconsensual creditor to absorb the majority of Dan-Ver's remaining assets, to the detriment of other nonconsensual creditors, merely for the purpose of awarding postpetition interest was found to be inequitable. 60 B.R. at 570–71.

### IV. Discussion

■ While we agree with the holding of the bankruptcy court, we do not entirely agree with the reasoning which the bankruptcy court used in reaching this result. There is no doubt that the language of § 506(b) is ambiguous, as evidenced by the different interpretations given to it by courts and commentators. We further agree that while the legislative history of § 506(b) is not entirely clear, it does provide some aid toward understanding § 506(b). Where we differ from the bankruptcy court is in its interpretation of the legislative history of the Act.

The bankruptcy court interprets the phrase "to the extent collectible under applicable law" as permitting postpetition interest on nonconsensual liens. Based on this interpretation, the judge implies that deletion of this language by Congress indicates congressional intent that such interest not be permitted on nonconsensual liens. On the contrary, "applicable law," which apparently refers to the pre-Code law previously discussed, would not permit postpetition interest on nonconsensual liens. Therefore, deletion of the aforementioned phrase would arguably imply the opposite; that is, Congress intended to permit recovery of postpetition interest regardless of whether a lien is consensual or nonconsensual.

The reasoning behind the deletion does not support this latter implication, however. Congress, in making the deletion, stated:

Section 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R. 8200 as passed by the House. If the security agreement between the parties provides for attorneys' fees, it will be enforceable under title II, notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c).

124 Cong.Rec. 32, 398, 33, 997 (1978). Thus, Congress was concerned that the phrase "to the extent collectible under applicable law," which lies before the insidious comma, would contradict the phrase "provided for under the agreement under which claim arose," which lies after the comma and would thereby obviate any written provision for attorneys' fees.

The Sapps' argument for postpetition interest is based on the theory that this same comma separates "interest on such claim" from "any reasonable fees, costs, or charges." Therefore, the Sapps claim, the provision for an "agreement under which such claim arose" only modifies these latter allowable items and not interest.

Congress, however, could not have viewed this comma as causing such a separation between interest and fees, costs, or charges and their respective modifiers. Following the Sapps' theory to its logical conclusion, the phrase "to the extent collectible under applicable law" would have no bearing on the provision for an "agreement under which such claim arose," because the comma would also separate § 506(b) so that the "applicable law" phrase would modify the interest provision only. If Congress had drafted § 506(b) with this intent in mind, the reasoning provided for the deletion of the "applicable law" phrase would be rendered moot. Accordingly, we conclude that Congress did not intend the requirement of an agreement to extend only to fees, costs, or charges; just as the "applicable law" provision would not have applied only to interest. We believe that the agreement requirement was intended to extend to interest as well as to fees, costs, or charges.

Consequently, we conclude that the pre-Code distinction between consensual and nonconsensual liens continues to be in effect under § 506(b), and also that the Sapps, as nonconsensual lien creditors, are not entitled to postpetition interest.

We are further persuaded toward this conclusion by the reasoning of the bankruptcy court in *In re Churchfield,* 62 B.R. 399 (Bankr.E.D.Mich.1986). In holding that § 506(b) does not provide for postpetition interest to the I.R.S. as a nonconsensual lien creditor, the court stated:

> We cannot believe that Congress would overrule an unbroken line of five court of appeals decisions on an issue involving the federal fisc without even one word of explanation of its intention. Likewise, we cannot find that the mere placement of a comma under the circumstances evidences such an intention. Therefore, we agree with those courts which found that a 506(b) creates no material change from prior practice, and are persuaded to follow the nearly unbroken line of cases which hold that creditors holding nonconsensual liens are not entitled to postpetition interest thereon in bankruptcy cases.

62 B.R. at 403. We also believe that Congress would have made some statement had it intended § 506(b) to change pre-Code law. In deleting the "applicable law" phrase, Congress specifically noted that it wanted the agreement requirement to govern attorneys' fees provided under § 506(b), "notwithstanding contrary law." Surely, Congress would have similarly noted any intent, on its part, if § 506(b) was meant to change the law with respect to postpetition interest.

For these reasons, the judgment of the bankruptcy court is affirmed. An appropriate order will follow.