In re Larry Paul BRANDENBURG and Marva Lou Bennett Brandenburg, d/b/a Brandenburg Farms, a sole proprietorship, Debtors.

Bankruptcy No. 386–00105.

United States Bankruptcy Court, D. South Dakota.

March 31, 1987.

---

J. Bruce Blake, Sioux Falls, S.D., for debtors/movants.

Mary G. Keller, Beadle County State's Atty., Huron, S.D., for creditor/respondent Beadle County, S.D.

James Jones, Hand County State's Atty., Miller, S.D., for creditor/respondent Hand County, S.D.

1. The Court has the authority to determine the extent of the debtors' tax liability under 11

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court on a motion for determination of extent of tax liability filed on behalf of Larry and Marva Brandenburg ("debtors") by Attorney J. Bruce Blake on February 2, 1987.[1] Debtors substantively allege that nonconsensual oversecured lien creditors, including statutory lien holders, are not entitled to interest on their prepetition claims under Bankruptcy Code Section 506(b) because that provision is ambiguous and, therefore, pre–1978 Bankruptcy Code-Bankruptcy Act decisions which almost uniformly denied any interest payments should be followed. Hand County, South Dakota, and Beadle County, South Dakota ("counties"), alternatively insist that the "plain meaning" of Section 506(b) entitles nonconsensual oversecured lien creditors to interest on their prepetition claims. Attorney Mary G. Keller represents Beadle County and Attorney James Jones, Hand County, and a hearing was held in Aberdeen, South Dakota, on February 11, 1987. The parties agree that the facts are not in dispute and the issue raised is a question of law.

### BACKGROUND

Debtors filed for relief under Chapter 11 of the Bankruptcy Code on October 30, 1986. They operate a grain farming business in northeastern South Dakota.

According to their amended A–2 schedules, the debtors owed Beadle County $1,800 and Hand County $20,000 for unpaid 1985 real estate taxes and accruing interest on the filing date. In their motion and brief, the debtors concede:

1) That they have not paid either Beadle or Hand County its 1985 real estate taxes and accruing interest;

2) That by reason of this tax nonpayment, both counties acquired a prepet-

U.S.C. § 505(a).

ition statutory lien against the debtors' real property;[2]

3) That by reason of these statutory tax liens, both counties' claims are secured "liens" subject to Bankruptcy Code Section 506(a) application;[3]

4) That the value of the real property subject to the tax liens greatly exceeds the amount of claims; and

5) That because the value of the real property exceeds the amount of both counties' tax lien claims, they are oversecured creditors as defined by Bankruptcy Code Section 506(a).[4]

## ISSUE

The principal issue raised is whether nonconsensual oversecured lien creditors, including statutory lien holders, are entitled to interest on their prepetition claims under Bankruptcy Code Section 506(b).

## CONCLUSION

■ As to this issue, the Court, adopting the Fourth Circuit's legal analysis and conclusions in *Best Repair Co., Inc. v. United States*, 789 F.2d 1080 (4th Cir.1986), *rev'g In re Best Repair Co., Inc.*, 50 B.R. 386 (D.E.D.Va.1985), holds that Bankruptcy Code Section 506(b) entitles nonconsensual oversecured lien creditors, including statutory lien holders, to interest on their prepetition claims. This is based on the following discussion.

At the outset, the Court notes that several years ago, in *In re Bormes*, 14 B.R. 895, 898 (Bankr.D.S.D.1981), it specifically held that judgment lien creditors (one type of nonconsensual lien holder) are entitled to interest on their prepetition claims under Bankruptcy Code Section 506(b) when the

value of real property is greater than the amount of their claim. In light of more recent court holdings to the contrary, the debtors have requested that the Court reconsider its *Bormes* holding.

Presently, the courts are divided on the issue of whether nonconsensual oversecured lien creditors are entitled to interest on their prepetition claims under section 506(b). Including the Fourth Circuit Court of Appeals in *Best Repair Co., Inc.*, 789 F.2d 1080, 1082 (federal tax lien), a majority of courts addressing this issue have held in the affirmative. *In re Charter Co.*, 63 B.R. 568, 571 (Bankr.M.D.Fla.1986) (mechanic's lien); *In re Russo*, 63 B.R. 335, 337 (Bankr.D.Mass.1986) (state tax statutory lien); *In re Henzler Mfg. Co.*, 55 B.R. 194, 197 (Bankr.N.D.Ohio 1985) (federal tax lien); *Matter of Romano*, 51 B.R. 813, 815 (Bankr.M.D.Fla.1985) (judgment lien); *In re Morrissey*, 37 B.R. 571, 573 (Bankr.E.D. Va.1984) (judgment lien); *In re Loveridge Mach. & Tool Co., Inc.*, 36 B.R. 159, 162 (Bankr.D.Utah 1983); *In re Hoffman*, 28 B.R. 503, 508 (Bankr.D.Md.1983) (IRS tax lien); *In re Bormes*, 14 B.R. 895, 898 (Bankr.D.S.D.1981) (judgment lien); *In re Busman*, 5 B.R. 332, 338 (Bankr.E.D.N.Y. 1980) (IRS tax lien). *See also Cardinal Federal Savings & Loan Association v. Colegrove*, 771 F.2d 119, 122 (6th Cir.1985) (Section 506(b) "provides for interest on all allowed secured claims where the value of the security is greater than the claim."); *In re Maldonado*, 62 B.R. 594 (Bankr.S.D.N. Y.1986) (Although neither the mortgage nor extension agreement provided for interest, an oversecured lender was entitled to interest under section 506(b).). A minority of courts have held in the negative. *In re*

---

**2.** Under South Dakota law, delinquent real property taxes become statutory liens pursuant to S.D.C.L. § 10–19–1, which reads as follows:

"All taxes shall become due on the first day of January of the year following that in which such taxes are assessed, and as between vendor and vendee shall become a lien upon real property on and after such date."

**3.** Under the Bankruptcy Code, the term "lien" means, among other things, statutory liens. 11 U.S.C. § 101(33) and H.Rep. No. 595, 95th Cong., 1st Sess. 311–14 (1977), U.S.Code Cong. &

Admin.News 1978, p. 5787; *see also* 2 *Collier on Bankruptcy* ¶ 101.31 (15th ed. 1986).

**4.** In pertinent part, Bankruptcy Code Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

*Churchfield,* 62 B.R. 399, 403 (Bankr.E.D. Mich.1986) (IRS tax lien); *In re Venable,* 48 B.R. 853, 855 (S.D.N.Y.1985); *In re Trent,* 42 B.R. 279, 281 (Bankr.W.D.Va. 1984) (judgment lien); *In re Stack Steel & Supply Co.,* 28 B.R. 151, 154 (Bankr.W.D. Wash.1983) (state tax lien).

The difference of opinion on this issue centers on how to properly interpret an agreed grammatical ambiguity in Section 506(b).[5] *See Best Repair Co., Inc.,* 789 F.2d at 1082; *In re Churchfield,* 62 B.R. at 400; *In re Loveridge Mach. & Tool Co., Inc.,* 36 B.R. at 162. *See also 3 Collier on Bankruptcy* ¶ 506.05 (15th ed. 1986).[6]

Bankruptcy Code Section 506(b) reads as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The minority view is that this section may reasonably read as having two equally possible meanings. As explained by Judge Spector in *In re Churchfield:*

If one reads § 506(b) to say that an over-secured creditor is entitled to interest—and also, if the agreement of the parties provides it, reasonable fees, costs or charges—then the [nonconsensual lien holder] is entitled to interest computed at some rate. On the other hand, if one reads the section to state that an over-secured creditor is entitled to interest, fees, costs, and charges, but only if the agreement with the debtor so provides, then the [nonconsensual lien holder] may not be entitled to interest.

62 B.R. at 400. *See also* n. 6.

Courts holding this view, finding section 506(b) too ambiguous to discern one "plain meaning," looked first to legislative history[7] and, thereafter, pre–1978 Bankruptcy Code-Bankruptcy Act decisions for guidance on this issue. *See In re Churchfield,* 62 B.R. at 401; *In re Best Repair Co., Inc.,* 50 B.R. 386, 387 (E.D.Va.1985), *rev'd, Best Repair Co., Inc. v. United States,* 789 F.2d 1080. In denying the oversecured tax lien holder (IRS) interest payments under section 506(b), Judge Spector, in *In re Churchfield,* first noted, in part:

> Not being an authority on English grammar and punctuation, we find that the words and punctuation of the statute are hopelessly ambiguous, and so move on to

---

5. While the courts agree that there is some ambiguity, they seemingly disagree on the degree or depth thereof, which ultimately results in different conclusions on this issue.

6. With respect to this, *Collier,* a leading treatise on bankruptcy, notes:
   The sentence structure of section 506(b) contains an ambiguity that has created some confusion over the applicable rate for computing interest to be allowed under section 506(b). The phrase "interest on such claim" is separated by a comma from the phrase "and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Such separation apparently derived from the need the drafters felt to make clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount). However, such separation raises the question of whether the phrase "provided for under the agreement under which such claim arose" applies to "interest on such claim" or only to "any reasonable fees, costs, or charges."

7. The Eastern District of Virginia United States District Court found the legislative history "wholly inconclusive" on the issue under consideration. 50 B.R. at 388. Although agreeing on little else, the Fourth Circuit Court of Appeals concurred on this point. 789 F.2d at 1082. In *Churchfield,* Judge Spector, however, determines that the legislative history is very helpful in the resolution of this issue. His position is had Congress intended to change pre-Code law, they certainly would have stated their intent. Section 506(b)'s legislative history reads as follows:
   Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees, costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.
   H.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, p. 6312.

analyze their meaning through examination of legislative intent....

Before there was a Bankruptcy Code there was a Bankruptcy Act. Many of the issues courts now struggle over were fought and resolved decades ago. If Congress disapproved of those decisions, it had the opportunity in 1978 to undo them in the Bankruptcy Code. For example, Congress enacted § 523(a)(6), which provides that debts arising from willful and malicious conduct by the debtor may be excepted from discharge. The House Committee on the Judiciary stated that " 'willful' means deliberate or intentional. To the extent *Tinker v. Colwell* [193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) ] (citation omitted) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.". (citations omitted) Or, if Congress particularly approved of a judicial result, it codified it. For instance, § 510(c), which authorizes bankruptcy courts to equitably subordinate certain claims, is "intended to codify case law, such as *Pepper v. Litton* [308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ] (citation omitted) and *Taylor v. Standard Gas & Electric Co.* [306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939) ] (citation omitted)." (citation omitted) Where no change was effected, it is presumed that the then current state of the law was intended to be retained. (citations omitted) ·

All five circuits of the Court of Appeals which were called upon to decide whether the Bankruptcy Act provided for post-petition interest to be paid to fully secured tax lien claimants held that it did not. (citations omitted) These Court of Appeals decisions noted:

Despite the general prohibition on the payment of post-petition interest, three exceptions have been developed by the federal courts. Interest may accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where securities, held by the creditor produced income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim.

(citations omitted) Only the third exception is at issue here. These opinions all carved out an exception to the third exception, by holding that only creditors with consensual liens are entitled to post-petition interest....

And from this, he found that:

We cannot believe that Congress would overrule an unbroken line of five court of appeals decisions on an issue involving the federal fisc without even one word of explanation of its intention. Likewise, we cannot find that the mere placement of a comma under the circumstances evidences such an intention. Therefore, we agree with those courts which found that § 506(b) creates no material change from prior practice, and are persuaded to follow the nearly unbroken line of cases which hold that creditors holding nonconsensual liens are not entitled to post-petition interest thereon in bankruptcy cases.

62 B.R. at 401–03.

Faced with the same argument that section 506(b) is too ambiguous to discern one meaning in that it may be also read as requiring an "agreement under which the claim arose" to apply equally to "interest on such claim" and, therefore, pre-Code case law should control, the Fourth Circuit, in *Best Repair Co., Inc.*, determined that:

[This] view strains the plain meaning of the language and grammar of the provision. Congress stated: "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." The phrase "interest on such claim" is set off by commas, and the following phrase is introduced by "and any." The effect of this usage is to make "interest on such claim" a separate and distinct clause to which "provided for under the agreement" does not apply. If Congress had wanted the agreement proviso to limit "interest on such claim" to consensual claims, it could have easily

have done so by listing seriatim and in parallel form the different items an over-secured creditor can recover subject to an agreement. Though Congress could have more clearly separated the interest clause from the agreement clause, we think that the natural meaning of its chosen words is to permit post-petition interest on nonconsensual oversecured claims. (footnotes omitted)

789 F.2d at 1082.[8]

Based on the foregoing, the Court finds the Fourth Circuit's legal analysis in *Best Repair Co., Inc.*, 789 F.2d 1080, well-reasoned and persuasive and, therefore, holds that Bankruptcy Code Section 506(b) entitles nonconsensual oversecured lien creditors, including statutory lien holders, to interest on their prepetition claims. This affirms the Court's holding in *In re Bormes*, 14 B.R. at 898.

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for the counties are directed to submit an appropriate order in accordance with Bankr.R.P. 9021.

---

**8.** In response to the contention that *Collier's* supports a contrary conclusion, the Fourth Circuit first observed that:

> The district court [relies] on an argument expressed in [*Collier*] to explain the grammar of § 506(b) in a manner consistent with [its] position. *Collier on Bankruptcy* suggests that "'interest on such claim' is separated by a comma from the [agreement phrase] ... to make clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount)."

But then concluded:

> [T]hat purpose is sufficiently served by qualifying "interest" with "on such claim." Further, the Congress could have limited interest to the underlying claim, and still made it clear that post-petition interest on nonconsensual claims is forbidden by adopting one of the constructions previously suggested.

*Id.* at 1082.