In re NEWBURY CAFE, INC. d/b/a 29 Newbury, Debtor.

Stephen J. GRAY, Trustee in Bankruptcy of Newbury Cafe, Inc. d/b/a 29 Newbury, Plaintiff,

v.

PATRIOT BANK, United States of America, Jane Brodey and Commonwealth of Massachusetts, Defendants.

Bankruptcy No. 85–01113–JG.
Adv. No. 86–1394.

United States Bankruptcy Court, E.D. Massachusetts.

April 16, 1987.

Christopher W. Parker, Hinkley Allen Tobin & Silverstein, Boston, Mass., for plaintiff.

Leonard Goldberg, Dept. of Revenue, Boston, Mass., for defendants.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

### INTRODUCTION

On October 9, 1985, Newbury Cafe, Inc. (the "Debtor" or "Newbury Cafe") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Approximately ten months later, on July 30, 1986, the Chapter 11 case was converted to a case under Chapter 7. The conversion followed this Court's approval of a sale of all the estate's assets for $305,000 to George Lewis Jr., the highest bidder in a sealed bid sale conducted by the Court.

Following the sale, on September 26, 1986, the Trustee filed a Complaint for Determination of Secured Claims and Allocation of Sale Proceeds in an attempt to properly allocate the proceeds from the sale between conflicting and allegedly secured parties. On January 5, 1987, the Court conducted a hearing to determine the validity, nature and extent of security interests and liens. At the hearing, the Trustee's counsel reported that settlements had been reached with all the defendants

except the Commonwealth of Massachusetts, Department of Revenue (the "DOR") and Jane Brodey. The matter now before the court involves the DOR. Two issues must be addressed: 1) whether the DOR is entitled to post-petition interest on its allowed secured claim; and 2) if so, whether the applicable rate of interest is the 18 percent per annum rate established by Massachusetts law. *Cf.* M.G.L. c. 62C § 32.

### FACTS

Prior to the filing of the Chapter 11 petition, the DOR had assessed meals and withholding taxes against the Debtor, and it had recorded written "Notices of Massachusetts Tax Lien" with the Suffolk County Registry of Deeds, the Secretary of State for the Commonwealth of Massachusetts and the Boston City Clerk. On September 17, 1986, the DOR filed a Proof of Claim for the unpaid meals and withholding taxes on which it stated: "[f]or purposes of Section 506(b) of the Bankruptcy Code, post-petition interest may be payable."

In its post-trial memorandum, the DOR asserts that its secured tax claim consists of tax in the amount of $52,508.88 and pre-petition interest at the 18 percent rate for a total claim of $65,739.25. Also, according to the DOR, the Trustee does not dispute the amount of its secured tax claim except for January 1984 meals taxes. If the Court allows the DOR post-petition interest on its secured claim at the 18 percent rate, the DOR notes that post-petition interest on the tax of $52,508.88 is $11,963.39 as of January 14, 1987. Interest continues to accrue at a per diem rate of $25.89.

### DISCUSSION

In the instant case, the Trustee does not dispute that the taxes in question were assessed against the Debtor, that the DOR made demand for payment of the tax and properly recorded its notices of lien and consequently that under state law the tax claim against Newbury Cafe is secured by a valid lien on all the Debtor's property, which lien is enforceable against subse-

quent mortgagees, pledgees, purchasers and judgment creditors.[1]

However, the Trustee does dispute the DOR's claim for post-petition interest. Resolution of that dispute involves an analysis of section 506(b) of the Bankruptcy Code. Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

Under the Bankruptcy Act, all five circuits that considered the issue of whether oversecured tax claimants are entitled to post-petition interest, including the United States Court of Appeals for the First Circuit, held that such claimants were not entitled to post-petition interest. According to Judge Cohill, in *In re Dan-Ver Enterprises, Inc.*, 67 B.R. 951 (W.D.Pa.1986), two reasons were promulgated for that holding:

(1) interest payments are penalties or damages assessed against the debtor for his detention of the creditor's money, and therefore it would be unjust to allow the creditor to recover such penalties or damages from other creditors who were not to blame for the detention; and (2) the bankruptcy court itself, not the debtor, detains the money after a petition is filed.

67 B.R. at 953 (citations omitted). In the First Circuit, the Court of Appeals in *In re Boston & Maine Corp.*, 719 F.2d 493 (1st Cir.1983), *cert. den.*, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984), explained the rationale as follows:

Despite the general prohibition on the payment of postpetition interest, three exceptions have been developed by the federal courts. Interest may accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where securities, held by the creditor produced income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim.

\*　　\*　　\*　　\*　　\*　　\*

Those cases in which courts have applied the third exception, permitting postpetition interest to accrue, have generally involved mortgages, trust deeds, pledges or conditional sales contracts. In all of these circumstances, the creditor's security interest arises from a voluntarily executed agreement between the debtor and the creditor. The two parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. To deny such a creditor postpetition interest, when the amount of the security is sufficient to

---

1. Section 50 of M.G.L. c. 62C governs the creation and perfection of Massachusetts tax liens. It provides in relevant part:

(a) If any person liable to pay *any tax* neglects or refuses to pay the same after demand, *the amount,* including any interest; additional amount, addition to tax, assessable penalty or forfeiture, together with any costs that may accrue in addition thereto, *shall be a lien* in favor of the commonwealth *upon all property* and rights to property, whether real or personal, belonging to such person. *The lien shall arise at the time the assessment is made* or deemed to be made and shall continue until the liability for the amount assessed or deemed to be assessed is satisfied. Said lien shall in any event terminate not later than *six years* from the date it was created.

(b) The lien imposed by this section *shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed* by the commissioner: (1) With respect to real property or fixtures, in the registry of deeds of the county where such property is situated, and (2) With respect to personal property, in the office in which a security or financing statement or notice with respect to the property would be filed in order to perfect a mortgage or comparable nonpossessory security interest in tangible personal property belonging to the person named in the relevant notice. The filing of a notice of any such lien or of a waiver or release of any such lien shall be received and registered or recorded without payment of any fee.

M.G.L. c. 62C § 50(a) and (b).

cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy.

\* \* \* \* \* \*

A meaningful distinction can be drawn between contractual liens, such as a mortgage or deed of trust, and statutory liens, such as Cambridge's perfected tax lien. A statutory lien depends for its existence solely on a legislative act creating the lien in specified circumstances. No bargaining takes place between the debtor-taxpayer and the taxing entity which is granted a lien; the lien cannot be classified as voluntary.

Further, the payment of the interest, which is secured by the lien, is not contemplated by the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device assuring the collection of delinquent taxes. In the context of an insolvency proceeding, to grant the taxing entity postpetition interest on its tax lien would impose the "enforcement device" not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid. Such creditors are but innocent bystanders; they could have done nothing to effect the prompt payment of taxes and avoid the imposition of postpetition interest. To penalize these creditors for the bankrupt's inability to pay its taxes on time *violates all notions of equity.*

719 F.2d 496–97 (emphasis supplied) (citations and footnote omitted).

In the instant proceeding, the Trustee argues that pre-Code law compels the conclusion that the DOR, as a nonconsensual oversecured creditor, is not entitled to post-petition interest. The Trustee interprets the language of section 506(b) to provide that the phrase, "agreement under which such claim arose," applies equally to the phrases "interest of such claim" and "any reasonable fees, costs, or charges," regardless of the comma interposed between the two phrases.

The DOR, relying on *In re Russo,* 63 B.R. 335 (Bankr.D.Mass.1986), maintains that the qualifying language, "provided for under the agreement under which such claim arose," applies only to "any reasonable fees, costs, or charges," by virtue of the comma following "the amount of such claim" and applicable rules of statutory construction. Accordingly, the DOR argues that a distinction between consensual and nonconsensual liens with respect to post-petition interest is invalid under the Bankruptcy Code.

The divergent views of the Trustee and the DOR are shared by courts considering the issue with respect to oversecured nonconsensual lien claimants. *Compare In re Best Repair Company, Inc.,* 789 F.2d 1080 (4th Cir.1986) (post-petition interest to oversecured nonconsensual lienholders allowed); *In re Gilliland,* 67 B.R. 410 (Bankr.N.D.Tex.1986) (same); *In re Russo,* 63 B.R. 335 (Bankr.D.Mass.1986) (same); *In re Henzler Manufacturing Co.,* 55 B.R. 194 (Bankr.N.D.Ohio 1985) (same); *In re Morrissey,* 37 B.R. 571 (Bankr.E.D.Va. 1984) (same); *In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159 (Bankr.Utah 1983) (same); *In re Hoffman,* 28 B.R. 503 (Bankr.D.Md.1983) (same); *In re Bormes,* 14 B.R. 895 (Bankr.D.S.D.1981) (same); *In re Busman,* 5 B.R. 332 (Bankr.E.D.N.Y. 1980) (same) *with In re Dan-Ver Enterprises, Inc.,* 67 B.R. 951 (W.D.Pa.1986) (post-petition interest to oversecured nonconsensual lienholders not allowed); *In re Churchfield,* 62 B.R. 399 (Bankr.E.D.Mich. 1986) (same); *In re Venable,* 48 B.R. 853 (S.D.N.Y.1985) (same); *In re Trent,* 42 B.R. 279 (Bankr.W.D.Va.1984) (same). *Cf. In re Colegrove,* 771 F.2d 119 (6th Cir. 1985); *In re Romano,* 51 B.R. 813 (Bankr. M.D.Fla.1985); 3 L. King, *Collier on Bankruptcy* ¶ 506.05 (15th ed. 1986) ("Postpetition interest, fees, costs and charges are not allowable under section 506(b), notwithstanding the existence of adequate collateral, in the absence of any contractual entitlement thereto. There is a split in authority as to whether a statutory entitlement suffices for the purpose of section 506(b).") The reasoning used by

courts to reach such contradictory results is highlighted in two recent bankruptcy court cases: *In re Churchfield*, 62 B.R. 399 (Bankr.E.D.Mich.1986) and *In re Russo*, 63 B.R. 335 (Bankr.D.Mass.1986).

In *In re Russo*, Judge Lavien noted that the leading First Circuit case addressing the issue under the Bankruptcy Act, *In re Boston & Maine Corp.*, 719 F.2d 493 (1st Cir.1983), involved a balancing of equities, a task made easy by the absence in the Bankruptcy Act of a section comparable to section 506(b) of the Bankruptcy Code. Accordingly, Judge Lavien declined to give weight to the case, following the Fourth's Circuit grammatical analysis of section 506(b) in *United States v. Best Repair Company, Inc.*, 789 F.2d 1080 (4th Cir. 1986), instead. He stated that in the absence of some definitive legislative history, "[t]he specific wording of the new 11 U.S.C. Sec. 506(b), given the natural import of the language itself, supports the view that seems to be held by a majority of the courts that have considered the issue. Namely, under the Code, no distinction is made between consensual and statutory liens as to interest which is to be paid so long as there is an excess of collateral." *In re Russo*, 63 B.R. at 337.

In contrast to Judge Lavien, Judge Spector, in *In re Churchfield*, 62 B.R. 399 (Bankr.E.D.Mich.1986), emphasized cases deciding the issue under the Bankruptcy Act, particularly *In re Boston & Maine Corp.*, 719 F.2d 493 (1st Cir.1983). He stated:

> Before there was a Bankruptcy Code there was a Bankruptcy Act. Many of the issues courts now struggle over were fought and resolved decades ago. If Congress disapproved of those decisions, it had the opportunity in 1978 to undo them in the Bankruptcy Code....

> \*   \*   \*   \*   \*   \*

> All five circuits of the Courts of Appeals which were called upon to decide whether the Bankruptcy Act provided for postpetition interest to be paid to fully secured tax lien claimants held that it did not.

> \*   \*   \*   \*   \*   \*

> We cannot believe that Congress would overrule an unbroken line of five court of appeals decisions on an issue involving the federal fisc without even one word of explanation of its intention. Likewise, we cannot find that the mere placement of a comma under the circumstances evidences such an intention. Therefore, we agree with those courts which found that § 506(b) creates no material change from prior practice, and are persuaded to follow the nearly unbroken line of cases which hold that creditors holding nonconsensual liens are not entitled to post-petitions interest thereon in bankruptcy cases.

*In re Churchfield*, 62 B.R. at 401, 403.

The Court has carefully considered the divergent views so ably articulated by Judge Lavien and Judge Spector and concludes that the award of post-petition interest to oversecured nonconsensual lienholders is not mandated under the Bankruptcy Code. Accordingly, the Court need not address the question regarding the applicable rate of interest.

The Court is chagrinned by the fact that its decision creates a split of opinion within the District of Massachusetts, but feels compelled to follow its philosophical convictions in an area where there is clear ambiguty and with respect to what the First Circuit described as "notions of equity." Although not determinative of the decision, the Court observes that the instant case, unlike the *Russo* case, is a Chapter 7 case. Here, there will be no opportunity for trade creditors to continue to do business with the debtor, thereby mitigating, at least to some small degree, the losses occassioned by their association with a bankrupt. In a Chapter 7 case like this one, creditors get one and only one dividend, although that dividend may be paid in installments. Despite the differences between *Russo* and the instant case, however, the Court reiterates that it does not believe that section 506(b) of the Bankruptcy Code, which applies equally to Chapter 7 and Chapter 11 cases, requires preferential treatment for oversecured, nonconsensual lien creditors

with respect to the payment of post-petition interest.

So ordered.