CONTIE, Senior Circuit Judge.
Debtor Ron Pair Enterprises, Inc. appeals from the district court’s order awarding postpetition interest on an oversecured prepetition federal tax lien. The district court, in reversing the bankruptcy court’s ruling, held that section 506(b) of the 1978 Bankruptcy Code, 11 U.S.C. § 506(b), provides for the payment of such interest by its plain terms. We conclude that the language of section 506(b) does not clearly provide for the payment of such interest and, in fact, it fails to explicitly overrule the pre-Code judicially created concept disallowing the payment of postpetition interest on nonconsensual prepetition oversecured claims. We therefore reverse the judgment of the district court.
I.
Debtor filed a bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code on May 1, 1984, in the United States Bankruptcy Court for the Eastern District of Michigan. The Government filed timely proof of a prepetition claim in the amount of $53,277.93, comprised of assessments for unpaid withholding and social security taxes, penalties and prepetition interest. The Government’s claim was properly perfected through a tax lien.
Debtor’s First Amended Plan of Reorganization was filed on October 1, 1985. The Plan provided for the payment of the Government’s prepetition tax claim, including prepetition interest which had accrued on that claim, but it did not provide for the payment of postpetition interest on that claim. Accordingly, the Government filed a timely objection to the Plan claiming, among other things, that section 506(b) of the 1978 Bankruptcy Code allows for the payment of postpetition interest since the assets securing the Government’s claim ex *369 ceeded the amount of the principal debt.[1] A hearing was held before the Bankruptcy Court on December 3, 1985, at which time the parties stipulated that the collateral securing the Government’s claim was adequate to pay that claim as well as postpetition interest on that claim; in other words, they stipulated that the claim was oversecured.
On December 6, 1985, the Bankruptcy Court denied the Government’s objection, concluding that section 506(b) did not authorize the payment of postpetition interest on the Government’s prepetition tax claim. The district court reversed the Bankruptcy Court’s judgment on June 30, 1986, concluding that the “plain language” of section 506(b) entitled the Government to such interest, relying on the Fourth Circuit’s decision in In re Best Repair Co., 789 F.2d 1080 (4th Cir.1986), and this court’s decision in In re Colegrove, 771 F.2d 119 (6th Cir.1985). This timely appeal followed.
II.
The sole issue before this court is whether section 506(b) of the 1978 Bankruptcy Code, 11 U.S.C. § 506(b), authorizes the payment of postpetition interest on an oversecured prepetition claim when that claim is nonconsensual in nature. Section 506(b) provides in full:
To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
(Emphasis added). Debtor argues that the emphasized clause above modified both “interest on such claim” as well as “any reasonable fees, costs, or charges,” thereby codifying the judicially created pre-Code rule regarding postpetition interest on oversecured prepetition claims. Debtor asserts that there is no indication that Congress intended to deviate from the judicially created rule that postpetition interest could not be awarded on nonconsensual prepetition claims, arguing that the language in section 506(b) is too ambiguous to be considered an explicit departure from a well-established doctrine.
The Government counters by arguing that the language of section 506(b) is unambiguous in that the emphasized clause above only modifies “any reasonable fees, costs, or charges.” The Government relies on the fact that the phrase “interest on such claim” is set off by commas and is followed by the words “and any,” indicating that interest is to be treated differently from fees, costs, or charges. The Government argues that since the language is unambiguous and allows for postpetition interest to be awarded on any allowed secured prepetition claim regardless of whether it is consensual or not, this Court should not refer to pre-Code law to interpret section 506(b). The Government suggests further that even if this Court is inclined to review pre-Code law, the punctuation, phraseology and grammatical structure of section 506(b) plainly and unambiguously express Congress’ intent to depart from pre-Code law. This is a case of first impression in this Circuit.[2]
We first reject the Government’s contention that pre-Code law should not be relied on in interpreting section 506(b) since the provision appears to be unambiguous. While the language of a statute is always the starting point when its construction is at issue, see Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301-02, 85 L.Ed.2d 692 (1985), it is only *370 the starting point. As in Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and Kelly v. Robinson, — U.S. -, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), pre-Code law should be reviewed in order to better understand the context in which the provision was drafted and therefore the language itself. Midlantic, 106 S.Ct. at 759-60; Kelly, 107 S.Ct. at 358.[3] In fact,
[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.
Midlantic, 106 S.Ct. at 759-60 (emphasis added) (citation omitted). See also Kelly, 107 S.Ct. at 358-61 & n. 12 (Congress was not permitted to “silently abrogate” a judicially created bankruptcy rule).[4] We believe, therefore, that in order to determine if section 506(b) changed the interpretation of a judicially created rule, we must first understand that rule and its origins.
Under pre-Code bankruptcy law, it was a well-established general rule that interest on both secured and unsecured prepetition claims ceased to accrue upon the filing of a bankruptcy petition. Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). This general rule applied to tax liens, City of New York v. Saper, 336 U.S. 328, 337-38, 69 S.Ct. 554, 559-60, 93 L.Ed. 710 (1949); United States v. Mighell, 273 F.2d 682 (10th Cir.1959), and had its foundation primarily in the equitable principle that the delays necessitated by bankruptcy proceedings should not place one creditor at an advantage or disadvantage in contrast to other creditors:
In the context of interest-bearing debts, the equitable principle enunciated in Sexton and Saper rests at bottom on an awareness of the. inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate.
Nicholas v. United States, 384 U.S. 678, 683-84, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966) (footnote omitted).
Over time, the federal courts created exceptions to this general rule to allow for postpetition interest on prepetition secured claims under the following circumstances: (1) the debtor is proven to be solvent; (2) the property held by the creditor to secure the debt produces income during the course of the proceedings; or (3) the value of the collateral securing the debt is sufficient to pay both the claim and postpetition interest on the claim. See, e.g., In re Boston & Maine Corp., 719 F.2d 493, 496 (1st Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984);[5] In re Kerber Packing Co., 276 F.2d 245, 246 (7th Cir.1960); United States v. Bass, 271 F.2d 129, 130 (9th Cir.1959); In re Macomb Trailer Coach, Inc., 200 F.2d 611, 613 (6th Cir.1952), cert. denied, 345 U.S. 958, 73 S.Ct. *371 940, 97 L.Ed. 1378 (1953). The third exception above was created pursuant to the theory that postpetition interest should be allowed where a security agreement had been voluntarily executed and the creditor had successfully bargained for specific, valuable collateral to secure the principal obligation. Accordingly, where the creditor had bargained to become an overseeured creditor, he had an expectation of receiving interest were it necessary to sell the security. See Kerber Packing Co., 276 F.2d at 247; Bass, 271 F.2d at 132; United States v. Harrington, 269 F.2d 719, 724 (4th Cir.1959).
It was equally well established by at least four courts of appeals that the third exception — allowing the payment of post-petition interest if the claim was oversecured — did not apply to liens which were nonconsensual in nature, such as tax liens, because the underlying reason for the exception did not apply. See Kerber Packing Co., 276 F.2d at 247; Mighell, 273 F.2d at 684; Bass, 271 F.2d at 131-32; Harrington, 269 F.2d at 721-24. Cf. Boston & Maine Corp., 719 F.2d at 497. In such cases the parties had not bargained concerning particular collateral, and the creditor therefore did not have an expectation of receiving interest. One noted distinction between tax liens and contractual liens is that tax liens often apply to all of the debtor’s property, whereas consensual liens are specific in nature and attach to only one asset. Kerber Packing Co., 276 F.2d at 247; Bass, 271 F.2d 131-32; Boston & Maine Corp., 719 F.2d at 497 n. 1.[6]
In light of the judicial interpretation under the Bankruptcy Act regarding the payment of postpetition interest, Debtor asserts that section 506(b) does nothing more than codify this third exception to the bar against paying postpetition interest. Several bankruptcy courts, and at least one district court and one commentator, have sided with Debtor in concluding that section 506(b) disallows postpetition interest on prepetition nonconsensual secured claims by virtue of the prior judicial interpretation of the Bankruptcy Act. See, e.g., In re Newbury Cafe, Inc., 72 B.R. 478 (Bankr.E.D.Mass.1987) (postpetition interest is not mandated under section 506(b)); In re Dan-Ver Enters., Inc., 67 B.R. 951 (W.D.Pa.1986) (language is ambiguous and legislative history supports conclusion that Congress intended to codify pre-Code law), aff'g 60 B.R. 568 (Bankr.W.D.Pa.1986);[7] In re Granite Lumber Co., 63 B.R. 466 (Bankr.D.Mont.1986) (in dicta, court notes that section 506(b) codifies preexisting law allowing interest if the agreement so provides); In re Churchfield, 62 Bankr. 399 (Bankr.E.D.Mich.1986);[8] In re Venable, 48 B.R. 853 (Bankr.S.D.N.Y.1985) (statutory language expressly provides that interest can be granted only pursuant to an agreement); In re Trent, 42 B.R. 279 (Bankr.W. *372 D.Va.1984) (statutory language is ambiguous and legislative intent was to codify preCode law); In re Stack Steel & Supply Co., 28 B.R. 151 (Bankr.W.D.Wash.1983) (postpetition interest is not allowable on nonconsensual liens, although court fails to mention section 506(b)); 3 Collier on Bankruptcy ¶ 506.05 (15th ed. 1987).
Collier on Bankruptcy concludes that section 506(b) “makes express provision for the allowance as part of an allowed secured claim, to the extent the collateral therefor exceeds the amount of such claim and any recovery under section 506(c), interest and reasonable fees, costs or charges provided for in the governing agreements,” id. at 506-38 (emphasis added), thereby codifying pre-Code case law. Id. at n. 1. See also id. at 506-41. While acknowledging that “[t]here is a split in authority as to whether a statutory entitlement [to postpetition interest] suffices for purposes of section 506(b),” id. at 506-41, Collier on Bankruptcy concludes that interpreting section 506(b) as disallowing postpetition interest is more in line with pre-Code precedents and is “consistent with the position that the phrase ‘provided for under the agreement under which such claim arose’ in 11 U.S.C. § 506(b) modifies the phrase ‘interest on such claim’ which ... is the preferred position.” Id. at 506-42 n. 5b. Further, this commentator notes that the legislative history does not evidence an intent to change the pre-Code rule. In discussing the grammatical structure of section 506(b) with respect to determining the applicable rate of interest, and in particular the use of the comma to separate the phrase “interest on such claim,” Collier on Bankruptcy reasons that “[s]uch separation apparently derived from the need the drafters felt to make clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount).” Id. at 506-43. This commentator notes, however, that a logical explanation for the comma is to allow for postpetition interest on nonconsensual lien claims, although Collier on Bankruptcy admittedly is not of that view. Id. at n. 10.
We are of the opinion that the language of section 506(b), when read in light of the pre-Code judically created doctrine, codifies the pre-Code law on the issue of allowable postpetition interest. While our interpretation results in a conflict with the Fourth Circuit and with many bankruptcy courts,[9] we are persuaded that our conclusion is correct, particularly in light of the rule of statutory construction enunciated in Midlantic and Kelly.
We cannot agree with the Fourth Circuit’s conclusion that the “plain meaning” of section 506(b) allows for the payment of postpetition interest on all allowed oversecured claims, including nonconsensual liens, nor do we agree that our interpretation of the provision “strains the plain meaning of the language and grammar of the provision.” In re Best Repair Co., 789 F.2d at 1082. In our view, the Fourth Circuit’s conclusion in Best Repair is weakened by its subsequent acknowledgment that “§ 506(b) is not so clear that we would not consider its legislative history to aid our interpretation,” id., and because it reaches its conclusion without a thorough *373 discussion of pre-Code law, perhaps concluding that pre-Code law is only relevant if the language is ambiguous. In light of Midlantic and Kelly, we believe such an approach is flawed. Rather, where it is claimed that the Code has significantly altered an existing judicially created concept, courts should review pre-Code law since it may be discovered that the language, when viewed in the proper historical context, is not unambiguous but is actually subject to more than one reasonable interpretation. In the instant case, section 506(b) can be interpreted as incorporating the third judicially created exception to disallowing post-petition interest on prepetition claims, including the limitations placed on that exception by the various circuit courts of appeals.
We conclude that the placement of a comma and the inclusion of the words “and any” do not evince an intention to reject the well-established judicially created concept.[10] The admitted lack of legislative history on this point lends further credence to our position.[11] If Congress intended to depart from pre-Code law with respect to only this one portion of section 506(b), particularly when several courts of appeals were unanimous in their interpretation of the Bankruptcy Act, such an intent must be expressed explicitly and not through the ambiguous use of a comma and the words “and any.” Cf. Egyptian Supply Co. v. Boyd, 117 F.2d 608, 611 (6th Cir.1941) (punctuation should be regarded as a “last resort in construing doubtful statutes”).
Accordingly, we REVERSE the order of the district court and reinstate the order of the Bankruptcy Court.

. There is no indication in the record regarding which portions of Debtor’s estate the Government's tax lien attaches, nor the value of specific pieces of property or the claims made on those pieces of property. However, it is not uncommon for tax liens to attach to all parcels of real estate owned by a debtor.

. Although In re Colegrove, 771 F.2d 119, 122 (6th Cir.1985), stated that § 506(b) "provides for interest on all allowed secured claims where the value of the security is greater than the claim,” that statement was dicta since the court was clearly not presented with the issue with which we are currently confronted.

. See also Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981) (the “ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.’ ”) (quoting Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928)) (citations omitted).

. In both Midlantic and Kelly, the Court reviewed the pre-Code judicially created doctrine before analyzing the statutory language itself. While the Government maintains that the rule of statutory construction enunciated in these two cases only applies if there is some overriding public policy for the doctrine itself, we find no support for that position. Rather, if there is a well-established principle in bankruptcy law, we believe Midlantic and Kelly come into play, requiring Congress to explicitly set forth its intention to deviate from the judicially created rule.

. While Boston & Maine Corp. is a 1983 decision, it interprets pre-Code law.

. The First Circuit in Boston & Maine Corp. sets forth an additional reason for not applying the third judicially created exception to nonconsensual liens:
[T]he payment of the interest, which is secured by the lien, is not contemplated by the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device assuring the collection of delinquent taxes. In the context of an insolvency proceeding, to grant the taxing entity postpetition interest on its tax lien would impose the "enforcement device” not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid. Such creditors are but innocent bystanders; they could have done nothing to effect the prompt payment of taxes and avoid the imposition of postpetition interest. To penalize these creditors for the bankrupt's inability to pay its taxes on time violates all notions of equity.
719 F.2d at 497. In other words, although an entity’s nonconsensual tax lien may be oversecured, the payment of postpetition interest to that entity nonetheless places it at an advantage in comparison to lower priority creditors, which harps back to the original reason for disallowing interest on any bankruptcy claim. This would be particularly evident, it seems, if the tax lien attaches to a large portion of the estate rather than specifically bargained-for collateral.

. The district court in Dan-Ver titles its discussion section as “The Case of the Capricious Comma,” which is an appropriate characterization of the comma in § 506(b) and the conflict it has caused amongst the courts.

. As in the instant case, Churchfield was reversed by the District Court for the Eastern District Michigan and an appeal was filed in this court. A stay pending a decision in the instant case was granted in Churchfield.

. See, e.g., In re Brandenburg, 71 B.R. 719 (Bankr.D.S.D.1987) (although acknowledging the grammatical ambiguity, court follows In re Best Repair); In re Busone, 71 B.R. 201 (Bankr.E.D.N.Y.1987) (follows In re Best Repair); In re Gilliland, 67 B.R. 410, 411 (Bankr.N.D.Tex.1986) (follows In re Best Repair, and reasons that the theory in the pre-Code cases is fundamentally flawed since "[t]he IRS should be no better off nor worse off than any other secured creditor”); In re Charter Co., 63 B.R. 568 (Bankr.M.D.Fla.1986) (plain meaning of § 506(b) permits post-petition interest on all oversecured claims); In re Russo, 63 B.R. 335 (Bankr.D.Mass.1986) (§ 506(b) does not draw distinction between consensual and statutory liens); In re Henzler Mfg. Co., 55 B.R. 194 (Bankr.N.D.Ohio 1985) (§ 506(b) is not ambiguous and allows postpetition interest on any oversecured claim); In re Romano, 51 B.R. 813 (Bankr.M.D.Fla.1985) (concludes that § 506(b) authorizes postpetition interest on judgment lien, although court does not provide any analysis); In re Morrissey, 37 B.R. (Bankr.E.D.Va.1984) (postpetition interest flows from the language of § 506(b)); In re Loveridge Mach. & Tool Co., 36 B.R. 159 (Bankr.D.Utah 1983) (§ 506(b) applies to all allowed secured claims); In re Hoffman, 28 B.R. 503 (Bankr.D.Md.1983) (postpetition interest allowed, no analysis provided).

. We do not find the "doctrine of the last antecedent," a statutory construction rule, to mandate an opposite result. While this doctrine does lend some support to the Government's position, see, e.g., First Charter Fin. Corp. v. United States, 669 F.2d 1342, 1350 (9th Cir.1982) (“In construing statutes, qualifying phrases are generally to be applied to the immediately preceding phrase and not to phrases more remote.”), we believe that blind resort to such a rule is improper, particularly when applying the rule would require this court to ignore pre-Code law and the statutory construction rule set forth in Midlantic and Kelly. Further, the phrase "interest on such claim” is not "remote” from the qualifying phrase at issue. Cf. District 6, UMW v. United States Dept, of Interior Bd. of Mine Operations Appeals, 562 F.2d 1260, 1264-65 & n. 17 (D.C.Cir.1977) (resort to the last antecedent rule found to be improper when the qualifying phrase could modify either the preceding short clause or the preceding main clause, creating an ambiguity).

. The Senate Report, the House Report, and statements of the chairmen on the responsible subcommittees do not address the language in section 506(b) referring to interest. Rather the Senate and House Reports only refer to fees, costs and charges:
Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees (including attorney’s fees), costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges aare [sic] secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.
S.Rep. No. 989, 95th Cong., 2d Sess. 68, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5854; see also H.R.Rep. No. 595, 95th Cong., 2d Sess. 356-57, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6312 (House Report does not have the parenthetical statement included above). The statements of the committee chairmen only explain why the reference to the attorney’s fees was eliminated.