In re NEWBURY CAFE, INC.
d/b/a 29 Newbury.

Stephen J. GRAY, Trustee in
Bankruptcy

v.

PATRIOT BANK, et al.

Civ. A. No. 87–1382–MA.

United States District Court,
D. Massachusetts.

Sept. 21, 1987.

Leonard M. Goldberg, Cambridge, Mass., Jane S. Schacter, Asst. Atty. Gen., Boston, Mass., for plaintiff.

Julia Singleton, Virginia Grieman, Christopher W. Parker, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This appeal from the Bankruptcy Court is brought by the Commissioner of the Massachusetts Department of Revenue ("Revenue"). The appeal challenges the ruling of the Bankruptcy Court that section 506(b) of the Bankruptcy Code ("the Code") did not change the law that existed prior to the adoption of the Code, thereby denying the request of Revenue for post-filing interest on its oversecured claim against the debtor, Newbury Cafe, Inc. ("Newbury").

On October 9, 1975, Newbury filed a Chapter 11 petition of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq.* That action was later converted to a Chapter 7 proceeding. On June 6, 1986, the Bankruptcy Court approved the sale of the assets of Newbury for $305,000. Approximately $203,404.38 of that sum remains, less amounts to be paid by the Trustee in Bankruptcy, Stephen J. Gray, for utility bills. On September 26, 1986, the Trustee filed a complaint for a Determination of Secured Claims and Allocation of Sale Proceeds to distribute the proceeds between conflicting and allegedly secured claims. Three taxing authorities made claims to the proceeds, of which only one, Revenue, claimed postpetition interest on its secured claim of $52,508.88 at an 18% interest rate. As of June 13, 1987, this claimed interest amounted to $15,846.89, with interest accruing at $25.89 *per diem.*

In a thorough opinion, dated April 16, 1987, Chief Judge Gabriel denied Revenue's request for post-petition interest. This opinion conflicts with an equally well-reasoned opinion by Judge Lavien in *In re Russo,* 63 B.R. 335 (Bkrtcy.D.Mass.1986). The only issue presented is whether Chief Judge Gabriel's opinion is supported by the evolving law of bankruptcy. The First Circuit has yet to rule on this issue. Since the issue is a pure question of law (i.e., the proper interpretation of section 506(b)), the Court must determine the issue *de novo.* *Liebowitz v. Columbia Packing Co.,* 56 B.R. 222 (D.Mass.1985), *aff'd,* 802 F.2d 439 (1st Cir.1986).

Section 506(b) of the Code concerns the recovery allowed oversecured creditors. It reads:

To the extent that an allowed secured claim is secured by property the value of

which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which the claim arose.

The meaning of the comma following the phrase "interest on such claim" is the focus of this case. Newbury argues that the phrase should be read along with the following one, thereby engrafting the limiting phrase "under the agreement under which the claim arose" onto the phrase concerning interest. Interest, then, would be provided to an oversecured party only when the security interest is consensual and makes provision for interest. Revenue, on the other hand, interprets the comma as creating a separation between the phrase concerned with interest from that establishing a consensual right to fees, costs, and charges, so that the section provides interest to oversecured parties in both consensual *and* nonconsensual situations. Both sides point to ample case authority to support their positions, although a majority of courts appear to support Revenue's position. *See, e.g., In re Busone,* 71 B.R. 201, 203 (Bkrtcy, E.D.N.Y.1987) ("Although the question is still not entirely free from doubt, the current weight of authority is to the effect that section 506(b) authorizes the allowance of postpetition interest to all oversecured creditors, regardless of whether the creditor's lien arises from an agreement or, as in the present case, by operation of statute").

One of the clearest and most influential expositions of section 506(b) in support of Revenue's position is contained in the Fourth Circuit's opinion in *Best Repair Co., Inc. v. United States,* 789 F.2d 1080 (4th Cir.1986).[1] The Fourth Circuit found that the language of section 506(b) established a distinction between interest and the other claims that could be made by an oversecured creditor:

The phrase "interest on such claim" is set off by commas, and the following phrase is introduced by "and any". The effect of this usage is to make "interest on such claim" a separate and distinct clause to which "provided for under the agreement" does not apply. If Congress had wanted the agreement proviso to limit "interest on such claim" to consensual claims, it could ... easily have done so by listing seriatim and in parallel from the different items an over-secured creditor can recover subject to an agreement. Though Congress could have more clearly separated the interest clause from the agreement clause, we think that the natural meaning of its chosen words is to permit postpetition interest on nonconsensual oversecured claims.

*Id.* at 1082 (footnotes omitted).

In footnotes, the Court discussed alternative formulations of section 506(b) Congress could have chosen that would have clarified its meaning to demonstrate the probable intention of Congress. For instance, the Court noted that had Congress merely eliminated one comma and written the section to read "there shall be allowed to the holder of such claim, interest on such claim and reasonable fees, costs and charges provided for under the agreement under which such claim arose," the section would clearly prohibit postpetition interest unless it is consensual. Further, had the phrase "provided for under the agreement" been placed before the phrase on interest, it, too, would have added support to the argument that an agreement on interest is necessary. *Id.* at 1082, n. 2. Congress did not do that, reasons the Court, thus interpreting the section as if a clear separation was intended, in effect reading into the section the bracketed material: "there shall be allowed to the holder of such claim [i] interest on such claim, and [ii] any reasonable fees, costs or charges ..." *Id.* n. 3. Since the Court found the legislative history inconclusive, this latter reading was adopted because "[t]here is, therefore, no reason to depart from the natural import of the language itself." *Id.* at 1082.

---

**1.** That decision was the basis for the ruling of Bankruptcy Judge Lavien in *In re Russo* in coming to the opposite conclusion of Judge Gabriel in the instant case.

Two points can be made about the Court's opinion in *Best Repair*. First, although the Court does a thorough job of explaining alternative ways that Congress *may* have expressed itself in writing the section, it says little about what Congress actually *did* mean by the construction it chose. Secondly, the Court could have highlighted one other grammatical argument that it made elsewhere in the opinion. If the interpretation advanced by the debtor in *Best Repair* is accepted, then the words "on such claims" following "interest" become superfluous. As it stands now, the interest phrase is not *merely* separated by a comma, it is also separated by the use of the words "on such claim" which are repeated in the following phrase concerning reasonable fees, costs and charges. In other words, Newbury's argument would be stronger if the sentence merely read "interest, and any reasonable fees, costs or charges ...," eliminating only the words "on such claim" following the word "interest". This would have the grammatical result of limiting the word "reasonable" to modifying the terms fees, costs and charges only, and would add support to the argument that the entire sentence is subject to the qualifying phrase "agreement under which such claims arose." [2]

Another court interpreted the language of section 506(b) in light of its legislative history to decide in favor of the position expounded by Newbury. In *In re Dan-Ver Enterprises,* 67 B.R. 951, 955 (W.D.Pa. 1986), the District Court noted that, as originally drafted, section 506(b) read:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section is greater than the amount of such claim, there shall be allowed to the holder of such claim, *to the extent collectible under applicable law* interest on such claim, and any reasonable fees, costs, or charges provided un-

der the agreement under which such claim arose.

*Id.* at 955, *quoting* H.R. 8200, 95th Cong., 1st Sess. (1977) (emphasis added by the court). The Court, noting in its opinion that the underscored language was deleted from the final version of the section, interpreted this legislative history as ultimately adding support to the position advanced by Newbury. As the court wrote:

> The bankruptcy court interprets the phrase "to the extent collectible under applicable law" as permitting postpetition interest on nonconsensual liens. Based on this interpretation, the judge implies that deletion of this language by Congress indicates congressional intent that such interest not be permitted on nonconsensual liens. On the contrary, "applicable law," which apparently refers to the pre-Code law previously discussed, would not permit postpetition interest on nonconsensual liens. Therefore, deletion of the aforementioned phrase would arguably imply the opposite; that is, Congress intended to permit recovery of postpetition interest regardless of whether a lien is consensual or nonconsensual.

> The reasoning behind the deletion does not support this latter implication, however ... [Legislative history suggests that] Congress was concerned that the phrase "to the extent collectible under applicable law", which lies before the insidious comma, would contradict the phrase "provided for under the agreement under which the claim arose," which lies after the comma and would thereby obviate any written provision for attorneys' fees. [The argument that the comma was meant to separate interest from fees, costs and charges such that "agreement under which such claims arose" only modifies the latter three must be rejected.] Congress ... could not have viewed this comma as causing

---

**2.** The Court in *Best Repair* made a similar argument in its opinion. Noting that the district court cited 3 *Collier on Bankruptcy* section 506.-05 (L. King 15th ed. 1985) which suggested that "'interest on such claim' is separated by a comma from the [agreement phrase] ... to make

clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount)," the Court of Appeals argued that the above purpose "is sufficiently served by qualifying 'interest' with 'on such claim.'" 789 F.2d at 1082.

this separation [because] ... the phrase "to the extent collectible under applicable law" would have no bearing on the provision for an agreement under which such claim arose," because the comma would also separate 506(b) so that the "applicable law" phrase would modify the interest provision only. If Congress had drafted 506(b) with this intent in mind, the reasoning provided for the deletion of the applicable law phrase would be rendered moot.

*Id.* at 955–56. Thus, concluded the Court, Congress did not intend that the requirement of an agreement apply only to fees, costs and charges, "just as the 'applicable law' provision would not have applied only to interest," *id.* at 956, thus leaving intact pre-Code law that distinguished between consensual and nonconsensual liens and rejected the award of post-petition interest to nonconsensual lien creditors.[3]

As the above discussion demonstrates, there is judicial disagreement as to the proper interpretation of the language of section 506(b). To determine an appropriate outcome in such a situation, the Court must closely examine the relevant policies underlying section 506(b). In conducting this analysis, the Court must bear in mind the general policies underlying the bankruptcy law itself. As one bankruptcy court noted, "[t]he two major purposes of the Code are to provide debtors with a 'fresh start' and to provide for the fair and equitable distribution of assets to creditors." *In re Morrissey*, 37 B.R. 571, 573 (Bkrtcy. E.D.Va.1984), *citing* 1 Bkr.L.Ed. Summary section 1.1 (1979).

Some notion of equity between governmental and private creditors seems to be the major policy argument in support of Revenue's position. As one court noted, "[t]he [government] should be no better off nor worse off then any other secured creditor. The [government] deserves equal treatment when compared to any other oversecured creditor." *In re Gulliland*, 67 B.R. 410, 411 (Bkrtcy.N.D.Tex.1986).[4] Although equating the positions of the government with that of private creditors has some surface plausibility, closer analysis reveals the basic flaw in the analogy. The practical effect of accepting the premise of Revenue's argument—that *all* oversecured creditors should be allowed postpetition interest on their claims—would be the more rapid depletion of the bankrupt's estate. Regardless of the other results of and rationales behind this fact, one result is clear—unsecured creditors and others with claims against the estate (to include the debtor himself, in the event that there is a surplus in the estate after distribution) will be less likely to obtain a fair return. Such a result seems to cut against the Code's policy of equitable treatment for both debtor and creditor alike. As one court noted, "[t]o allow a nonconsensual creditor to absorb the majority of the Debtor's remaining assets, to the detriment of other non consensual creditors, merely for the purpose of awarding postpetition interest, is not at all equitable." *Matter of Dan–Ver Enterprises, Inc.,* 60 B.R. 568, 570–71 (Bkrtcy.W.D.Pa.1986), *aff'd, In re Dan–Ver Enterprises, Inc.,* 67 B.R. 951 (Bkrtcy.W.D.Pa.1986).

Advocates of Revenue's position also argue that the granting of postpetition interest would not be inequitable with respect to the debtor himself. "To foster the policy of providing the debtor with a fresh start, the general rule is that unmatured interest at the time of the filing of the petition is not allowed as a part of a claim against the debtor's estate. However, an allowance of postpetition interest on an oversecured claim does not have a 'chilling effect' on the debtor and provides a distribution to the creditor of the full and proper amount of its claim." *In re Morrissey,* 37 B.R.

---

**3.** Other courts dispute this latter conclusion, however. For instance, the Court in *In re Loveridge Machine & Tool Co., Inc.,* 36 B.R. 159, 162 n. 4 (Bkrtcy.D.Utah 1983), focusing on the scant legislative history contained in the House and Senate Reports, noted that some have argued it was Congress' intent to codify current law (a phrase used in the reports) only with respect to fees, costs and charges. *See also In re Russo,* 63 B.R. 335, 337 (Bkrtcy.D.Mass.1986).

**4.** This opinion was attacking the distinction between consensual and nonconsensual lienholders discussed more fully below.

571, 573 (Bkrtcy.E.D.Va.1984) (citations omitted). Such an argument, although again not without some appeal at first blush, nevertheless ignores the effect on the debtor of reducing the estate by the granting of postpetition interest while assuming that a distribution without such interest to the creditor somehow represents an inappropriate or unfair settlement of his claims. This also appears to undercut the equitable purposes underlying the Code.

Other policy considerations militate in favor of the debtor Newbury's position here. These seem grounded upon a simple fact— that the minor change in language adopted by Congress in the recent revisions of the Bankruptcy Code certainly meant to convey no shift in meaning of those provisions themselves. As the Bankruptcy Court put it so forcefully in *In re Churchfield*, 62 B.R. 399 (Bkrtcy.E.D.Mich.1986), the policies motivating the Bankruptcy Act, the precursor to the Bankruptcy Code, were strong and long-standing ones. For instance, the Court in *Churchfield* relied heavily on the examination of these policies by the First Circuit in *In re Boston & Maine Corp.*, 719 F.2d 493 (1st Cir.1983), where the circuit court drew a clear distinction between consensual and nonconsensual security interests under the Bankruptcy Act:

> [One of the exceptions to the rule against the payment of post-petition interest is] where the amount of the secured creditor's security is sufficient to satisfy both the principal and the interest due on the secured claim ... Those cases in which the courts have applied [this] third exception ... have generally involved mortgages, trust deeds, pledges or conditional sales contracts. In all of these circumstances, the *creditor's security interest arises from a voluntarily executed agreement* between the debtor and the creditor. The two parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. *To deny such a creditor postpetition interest,* when the amount of the security is sufficient to cover both the principal and interest due, *would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy.* Thus, granting of postpetition interest to ... holders of contractual liens satisfies the expectations of the parties and strikes an equitable balance between the creditors and the debtors ... [Therefore a] meaningful distinction can be drawn between contractual liens ... and statutory liens ... A statutory lien depends for its existence solely on a legislative act creating the lien ... No bargaining takes place between the debtor-taxpayer and the taxing entity granted a lien; the lien cannot be classified as voluntary.
>
> Further, the payment of interest, which is secured by the lien, is not contemplated by. the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device ... In the context of an insolvency proceeding, *to grant the taxing entity postpetition interest on its tax lien would impose the "enforcement device" not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid.* Such creditors are not innocent bystanders ... [t]o penalize these creditors for the bankrupt's inability to pay its taxes on time *violates all notions of equity.*

*Id.* at 496–97 (citations omitted, emphasis supplied), *cited in In re Churchfield,* 62 B.R. at 402.[5] Another court expressed the reasons behind the pre-Code rule denying

---

5. The Bankruptcy Court in *In re Russo* attempted to distinguish the *Boston & Maine* case by noting that it "was decided under the old [Bankruptcy] Act which had no specific provision on this point." 63 B.R. at 336. The court added that the balance of equities was different in the case as well, since it "dealt with the reorganiza-tion of a railroad, naturally involving great public concern and requiring the balancing of the town's right or need for the interest on its real estate taxes with the effect the payment of that interest would have had on reorganizing the railroad." *Id.* at 336–37.

**264**

postpetition interest to nonconsensual ov-
ersecured creditors more succinctly:

> Two reasons were given for this rule:
> (1) interest payments are penalties or
> damages assessed against the debtor for
> his detention of the creditor's money, and
> therefore it would be unjust to allow the
> creditor to recover such penalties or dam-
> ages from other creditors who were not
> to blame for the detention; and
> (2) the bankruptcy court itself, not the
> debtor, detains the money after a petition
> is filed.

67 B.R. at 953.

Lastly, the opinion of the court in *In re
Churchfield* underscored an obvious but
helpful point that supports following the
above rationales in denying postpetition in-
terest. Under the old Bankruptcy Act, ob-
served the court, all five circuit courts
which had considered the postpetition inter-
est issue had found that such interest was
not payable. Judge Spector concluded
from this that

> [w]e cannot believe that Congress would
> overrule an unbroken line of five court of
> appeals decisions on an issue involving
> the federal fisc without even one word of
> explanation of its intention. Likewise,
> we cannot find that the mere placement
> of a comma under the circumstances evi-
> dences such an intention. Therefore, we
> agree with those courts which found that
> Sec. 506(b) creates no material change
> from prior practice, and are persuaded to
> follow the nearly unbroken line of cases
> which hold that creditors holding noncon-
> sensual liens are not entitled to postpeti-
> tion interest thereon in bankruptcy cases.

*Id.* at 403.

I, too, am persuaded that Congress
meant no such radical change in policy by
the placement of a solitary, unexplained
comma.

Accordingly, I conclude Chief Judge Ga-
briel was correct in denying Revenue's mo-
tion for postpetition interest on its overse-
cured claim. The order of the Bankruptcy
Court is affirmed.

SO ORDERED.